**UNITED STATES v. SEAS SHIPPING CO., Inc., et al.**

**SEAS SHIPPING CO., Inc. v. TURNER & BLANCHARD, Inc.**
**THE BC–654.**

**.THE ROBIN TUXFORD.**

Nos. 17577, 17638.

United States District Court
E. D. New York.

May 10, 1950.

Supplemental Opinion May 31, 1950.

J. Vincent Keogh, United States Attorney, Brooklyn, N. Y., Louis E. Greco, Assistant United States Attorney, New York City, for U. S.

Barns & Cook, New York City, Paul L. Murphy, New York City, for respondent Seas Shipping Co.

Macklin, Speer, Hanan & McKernan, New York City, Charles J. Carroll, Jr., New York City, for respondent Turner & Blanchard.

INCH, Chief Judge.

These actions arise from the Army Barge BC–654 having been struck by the propeller of the S/S Robin Tuxford (hereinafter called the Tuxford).

The first action is by the United States of America, as owner of this Army barge BC–654 against the Tuxford, her owner the Seas Shipping Company, Inc. (hereinafter called "Seas Shipping"), and Turner & Blanchard (hereinafter called the "Stevedoring Co."), for damage to the barge. The second action is by Seas Shipping against the Stevedoring Co. for damage to the Tuxford's propeller. Both actions were consolidated for the purposes of trial only.

On May 1, 1944, the Tuxford was occupying the inner berth on the south side of Pier 2, Staten Island, bow in toward the bulkhead, with her starboard side to the pier. The Army barge BC–654 was moored by means of a bow and stern line to the port side of the ship, bow in to the slip, opposite the No. 5 hatch, which is the hatch nearest the stern of the Tuxford. Immediately ahead of the BC–654, and similarly moored to the Tuxford, was the barge CG–126, from which the Stevedoring Co. was unloading cement ballast blocks into the Tuxford. At about this time, in connection with some repairs or lubrication in the engine room, the propeller of the Tuxford had been slowly turning over since 9 or 9:30 that morning. It was turning clockwise at about one revolution every six minutes and with only two feet of the tip of the propeller blades being visible above the water. The Chief Officer on deck of the Tuxford admitted that he had not been notified by the ship's Engineer that the propeller was turning over, and although he testified that "warning boards" were painted on the ship in conspicuous places, there is no proof where

they were posted or what they stated. On the other hand, all the witnesses for the other parties denied that they received any notice that the propeller was in motion. I find, therefore, that adequate notice of the turning propeller was not given either to the Stevedoring Co. or to the bargee of the BC–654.

At about 10:30 A.M. that morning the Stevedoring Co. in order to better unload the CG–126, moved the BC–654, without the permission of its Captain, back toward the stern of the Tuxford. This action by the stevedores in thus moving the barge back so close to the propeller with slack lines, might in and of itself have indicated an unsafe place for the barge. However, this became a fact when the barge was later struck about midship by the moving propeller, thus causing the damage claimed.

The Stevedoring Co. was thus at fault in making no effort to determine whether the ship's propeller was turning before moving the barge from its safe berth, where it was properly moored, to that dangerous place near the ship's stern, and in leaving the barge's lines in such a condition that it was able to swing under the ship's counter and come in contact with the propeller.

The Tuxford was equally at fault in turning its propeller without adequate notice to the Stevedoring Co. and the bargee of the BC–654. It should have anticipated that the slowly moving propeller, with only a small part being visible above the water, might cause damage to a barge which the Stevedoring Co. might be shifting or unloading in the course of its work. The damage to the BC–654 was, therefore, caused by the concurring negligent acts of the Stevedoring Co. and the Tuxford's crew.

I do not find that the barge Captain of the BC–654 was in any way at fault. His testimony at the trial impressed me as being honest and straightforward. He said that while he was in his cabin he heard a thud and came out on deck to investigate, thinking that something had dropped onto the deck of his barge. Except for the fact that his barge had been moved aft about thirty to thirty-five feet, everything appeared to be in order. About fifteen min-

utes later he heard a second thump, and on coming out on deck again, was notified by another barge captain that the Tuxford's propeller was turning and striking against the BC–654. After attempting to hold his barge away from the ship with a pole, and shouting to three sailors aboard the ship, and to some stevedores working aboard the CG–126 to have the propeller stopped, he finally went aboard the Tuxford and notified the Engineer, who thereupon immediately stopped the engine. The statement of the bargee to the Marine Casualty Investigating Officer, dated May 1, 1944 is not inconsistent with his testimony at the trial. The statement was dictated by the investigating officer, and the events stated therein are not necessarily set forth in chronological order or in complete detail, and the bargee's testimony at the trial may be reasonably considered as supplementing rather than contradicting this statement.

Finally, there is no proof to support the contention of the Stevedoring Co. that some other vessel operating in the slip caused the BC–654 to come in contact with the Tuxford's propeller.

The United States of America, as owner of the BC–654, is entitled to a decree against Seas Shipping and the Stevedoring Co. for damage to its barge, with interest and costs, and the libel of Seas Shipping against the Stevedoring Co. should be dismissed with costs.

Findings of Fact and Conclusions of Law are filed herewith.

Settle decrees on notice.

### Findings of Fact

1. The BC–654 is a deck type scow whose dimensions are: 110′ length, 32′ beam, 8′ depth, owned by the United States of America.

2. The S/S Robin Tuxford is owned by Seas Shipping Co., Inc.

3. Turner & Blanchard, Inc., is a corporation engaged in stevedoring, and was so engaged at Pier 2, Staten Island, on May 1, 1944.

4. On May 1, 1944 the S/S Robin Tuxford was occupying the inner berth on the south side of Pier 2, Staten Island, with her starboard side to the pier.

5. The BC–654 was moored by means of a bow and stern line alongside the No. 5 hatch, which is the hatch nearest the stern of the Tuxford, with her starboard side to the port side of the Tuxford.

6. About three feet ahead of the BC–654, and similarly moored to the Tuxford was the barge CG–126, from which cement ballast blocks were being unloaded into the Tuxford.

7. On May 1, 1944 the bargee reported to the Army Base, and was transported to his barge at Pier 2, Staten Island, where he boarded his vessel between 9 and 9:30 A.M.

8. The BC–654 was in the same position as when he had left it the previous evening opposite the No. 5 hatch of the Tuxford, and everything was in order.

9. At about 10:30 May 1st, 1944, employees of Turner & Blanchard, for their own convenience in unloading the CG–126, and without permission of the Captain of the BC–654, moved that barge toward the stern of the Tuxford so that the midships of the BC–654 was about opposite the propeller of the Tuxford, with slack lines.

10. Later that morning the bargee of the BC–654 heard a thud as though something had dropped on his deck. He went out to investigate and noticed that his barge had been moved aft about thirty to thirty-five feet. Everything appeared to be in order.

11. About fifteen minutes later he heard a second thud and going out on deck again was told by another barge Captain that the Tuxford's propeller was turning and striking the BC–654.

12. The propeller had been turning since 9 or 9:30 A.M. that morning at a rate of about one revolution every six minutes, and with only two feet of its blade tips being visible above the water.

13. At no time was the bargee of the BC–654, or the employees of Turner & Blanchard notified by the crew of the Tuxford, that the propeller was in motion.

14. The bargee held his barge away from the ship with a long pole and after

attempting to have three sailors aboard the Tuxford, and some stevedores aboard the CG–126 notify the Tuxford's crew to stop the engine, went aboard the Tuxford and notified the Engineer to stop the engine, which was done.

15. The deck officers aboard the Tuxford had no knowledge that the propeller was revolving until notified by the bargee of the BC–654 that his barge was damaged.

16. As a result of the collision, the BC–654, and the propeller of the Tuxford were damaged as claimed.

## Conclusions of Law

 1. Seas Shipping Co., Inc., as owner of the Robin Tuxford was at fault in failing to notify the bargee of the BC–654, and the employees of Turner & Blanchard, Inc., of the turning propeller.

2. Turner & Blanchard, Inc., was at fault in shifting the BC–654 from a safe berth to an unsafe berth.

3. Seas Shipping Co. Inc., and Turner & Blanchard, Inc., are jointly and severally liable for the damages sustained by the BC–654, and the United States of America, as owner of the barge, is entitled to a decree to recover its damages, with interests and costs against both, jointly and severally.

4. Seas Shipping Co., Inc., being equally at fault with Turner & Blanchard, Inc., for damage to the Tuxford's propeller, is not entitled to a decree against Turner & Blanchard, and its libel should be dismissed with costs.

## Supplemental Opinion

Seas Shipping Co., Inc., moves in the Seas Shipping Company, Inc. v. Turner & Blanchard, Inc., action to amend the fourth Conclusion of Law herein, dated May 10, 1950, so as to provide for recovery of half damages to the Tuxford's propeller against Turner & Blanchard, Inc. Turner & Blanchard, Inc., makes a cross-motion in both actions for reconsideration of the questions involved as to the time that the propeller of the Tuxford commenced turning.

After hearing counsel on the above motions, I adhere to my original finding

that the Tuxford's propeller had been turning since 9 or 9:30 on the morning of the accident. However, the fourth Conclusion of Law is amended to read as follows: "4. Seas Shipping Company, Inc., being equally at fault with Turner & Blanchard, Inc. for damages to the Tuxford's propeller, is entitled to a decree against Turner & Blanchard, Inc. for half damages, with interest and costs."

Accordingly, the next to the last paragraph of my opinion herein dated May 10, 1950 is amended to read as follows: "The United States of America, as owner of the BC–654, is entitled to a decree against Seas Shipping and the Stevedoring Co. for damage to its barge, with interest and costs, and Seas Shipping is entitled to a decree against the Stevedoring Co. for half damages to the Tuxford's propeller, with interest and costs."

Settle decree on notice in the Seas Shipping Company, Inc. v. Turner & Blanchard, Inc. action.